UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOEL B. ATTIA,                                                    PLAINTIFF

V.                                                    CIVIL NO. 1:20-CV-332-RPM

HARD ROCK CASINO, ET AL.,                                         DEFENDANTS

## **MEMORANDUM OPINION AND ORDER**

### I.      **Introduction**

Before the Court *sua sponte* is *pro se* plaintiff Joel B. Attia's ("Attia") Complaint, *see* 28

U.S.C. § 1915(e)(2), which was filed on October 26, 2020, Doc. [1]. In his Complaint, Attia made

the following allegations:

> Hard Rock Casino would not help stop the people who stole my car keys from my
> motorcycle that was parked in the parking garage that they claim they share with
> the City of Biloxi, but the camera film if [sic] it would have been produced on the
> night in question (but the casino refuse even [sic] when police was [sic] called) (by
> me and officer Shultz case # 20–008485 on 5–22–2020 for theft against [sic] some
> of the defendants) it could have stopped the defendants from gaining entry to the
> plaintiffs house over and over putting [sic] rat poison and acid in food [sic] and
> products that caused plaintiff cancer and undue hurt, and mental hurt.

> [Doc. [1], at 8.]

He seeks $230 billion in damages based on his "mental health rights, privacy rights, [Fifth

Amendment] rights . . . , terrorism, human rights, [and] mental and bodily health [sic] hurt." Doc.

[2], at 7–9.[1]

On November 5, 2020, Attia was granted *in forma pauperis* status. Doc. [4]. However, issuance

of summons and service of process was stayed pending further order of the Court. *Id.*, at 2. On that

same date, the Court also issued an order for Attia to show cause why his Complaint should not be

---

[1] When asked at the hearing why he is seeking $230 billion in damages, Attia responded that he "had to start
somewhere."

dismissed for lack of subject-matter jurisdiction. Doc. [6]. In response, Attia stated that his case

was grounded in federal civil rights and "terrorism" law. Doc. [7]. On February 11, 2021, the Court

conducted a screening hearing to allow Attia to expound on the allegations in his Complaint. Attia

attended the hearing in person and consented to this Court's jurisdiction on that date. Doc. [11].[2]

## II.   Facts

At his screening hearing, Attia took the opportunity to fully flesh out the allegations in his

Complaint.[3] Those facts are as follows.

On one night in 2013, while he was taking a shower, Attia heard a sound in the attic of his

house. Armed with a crossbow, he went to investigate the noise. Attia discovered several

individuals, former government employees who are named individual defendants here

(collectively, "individual defendants"), attempting to gain access to his house by drilling a hole

through his roof. Far from being there to commit theft or another such crime, these individual

defendants were there, Attia claims, to simply watch him take a shower because they were, in his

words, "well-known gays." Upon spotting the individual defendants, Attia attempted to shoot them

with the aforementioned crossbow. However, he could not get the crossbow safety off so the

---

[2] In the Fifth Circuit, a plaintiff can legally consent to have his or her case heard in full by a magistrate judge before named defendants have been served. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) (holding that unserved, named parties are not "parties" within the meaning of 28 U.S.C. § 636(c)); *Pittman-Bey v. Celum*, 557 F. App'x 310, 311 (5th Cir. 2014) (finding no issue with magistrate judge's dismissal of case where plaintiff consented but no defendant was served); *Gomez v. Willacy Cty. Jail*, No. CV 1:19–170, 2020 WL 6158767, at *1 (S.D. Tex. Oct. 21, 2020) (dismissing civil rights complaint after plaintiff consented but no defendant was served). This is not, however, the law in every circuit. *See Williams v. King*, 875 F.3d 500, 503–4 (9th Cir. 2017); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 470 (7th Cir. 2017); *Henry v. Tri-Servs., Inc.*, 33 F.3d 931, 933 (8th Cir. 1994).

[3] During the screening hearing, it came to the Court's attention that Attia has been engaging in piecemeal litigation in the Southern District of Mississippi over the past several months. *See, e.g., Attia v. Nvidia Corp., et al.*, No. 1:20–CV–00343 (S.D. Miss. April 6, 2021); *Attia v. Jackson*, No. 1:20–CV–211–LG–RPM, 2020 WL 7701018 (S.D. Miss. Nov. 30, 2020), *report and recommendation adopted*, No. 1:20–CV–211–LG–RPM, 2020 WL 7388430 (S.D. Miss. Dec. 16, 2020). Indeed, the facts that gave rise to the present case sprung from a larger universe of facts that encompass the above-cited lawsuits. Further, Attia was adamant that he is planning to file more complaints arising from these facts in this jurisdiction and in the Southern District of Alabama. For purposes of judicial economy, the Court has put forth the entire core of facts set forth by Attia here.

individual defendants escaped into the night. After the intrusion, Attia "reinforced" his attic and roof to prevent their reentry.

After these 2013 events, the individual defendants decided to murder Attia because he caught them attempting to watch him take a shower. In furtherance of this plan, the individual defendants surreptitiously implanted a square, credit card-sized "NVIDIA supercomputer" into Attia's abdomen when he was undergoing a surgical procedure.[4] The NVIDIA supercomputer contains a GPS that enables the defendants to follow Attia everywhere on a daily basis. The defendants have also hidden NVIDIA cameras in Attia's house. These high-tech cameras operate at a "mixed reality" frequency, emitting red, blue, green, and yellow light, and enable the individual defendants to, for example, see through Attia's clothes. Finally, the individual defendants shine lasers through Attia's windows in order to leave physical scars on his body.

In addition to these preliminary activities, the individual defendants needed a new entry point into Attia's house after the foiled 2013 entry. They decided to steal Attia's house and motorcycle keys (collectively, "keys") on the night of May 22, 2020 when he was gambling at the Hard Rock Casino. According to Attia, he left his keys on his motorcycle in the casino parking lot and parked near a security camera to ensure nothing was stolen therefrom. When Attia later returned to his motorcycle, however, he saw the individual defendants speed off in a white Honda Accord with his keys. Attia sought the pertinent surveillance video; but Hard Rock Casino staff refused to release the security footage to him. Thereafter, the individual defendants used the stolen keys to enter Attia's house, and, according to Attia, put rat poison in his food and acid in his shampoo. The rat poison, he says, "thins his blood." The acid, he says, caused him to suffer from "burns."

---

[4] Attia stated that he had a feeding tube placed into his abdomen because there was a "silver ball" in his intestines and he had been unable to eat for three years.

When asked how he knew that the individual defendants were taking these actions, Attia stated that they told him.

This action followed.[5]

### III. <u>Analysis</u>

### A. Frivolousness

### i. Law

When a plaintiff is travelling *in forma pauperis* under Section 1915, his Complaint is subject to increased oversight by the Court. *See, e.g., Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97–98 (5th Cir. 1994). Relevant here, under Section 1915(e)(2), "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case *at any time* if the court determines that . . . (B) the action . . . (i) is frivolous . . . ." 28 U.S.C. § 1915(e)(2)(B)(i) (emphasis added). For purposes of Section 1915(e)(2)(B)(i), a complaint is "frivolous" when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). One class of frivolous complaints are those containing "categorically baseless" claims describing "fanciful," fantastical, or "delusional" scenarios. *Id.* at 32–33. *See also Barnes v. United States*, 800 F. App'x 284, 286 (5th Cir. 2020); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). A complaint is "fanciful," fantastical, or

---

[5] After filing the present lawsuit, Attia filed several other lawsuits arising from the same or a similar set of facts. *See, e.g., Attia v. Isle of Capri, et al.*, No. 1:21–CV–177–TBM–RPM (S.D. Miss. May 25, 2021) (alleging that named individual defendants in the present case have harassed him in other casinos); *Attia v. Huang, et al.*, No. 1:21–CV–00179–TBM–RPM (S.D. Miss. May 25, 2021) (alleging that named individual defendants in the present case learned that NVIDIA produced "mixed reality lights" after viewing a "webinar" speech by NVIDIA CEO Jensen Huang); *Attia v. Wray, et al.*, 1:21–CV–00178–HSO–JCG (S.D. Miss. May 25, 2021) (alleging that the U.S. government "loaned" NVIDIA money to create the "mixed reality" cameras and supercomputers, which the U.S. government placed in satellites and household light fixtures); *Attia v. Wray*, No. 1:21–CV–00159–TBM–RPM (S.D. Miss. May 14, 2021) (alleging that U.S. government used high-frequency NVIDIA "mixed reality" cameras to generate COVID-19 in human bodies).

"delusional" when the facts alleged therein "rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton*, 504 U.S. at 33.

### ii.      Application

Here, after liberally construing his Complaint, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is clear that Attia's allegations fall comfortably with the class of cases that are "completely baseless" insofar as his allegations are fanciful, fantastical, and delusional. *See, e.g., Jackson v. Obama*, No. 1:16–CV–379–HSO–JCG, 2017 WL 1100450 (S.D. Miss. Feb. 9, 2017) (dismissing as frivolous a complaint alleging that high-profile defendants recorded, harassed, and tortured plaintiff as well as generally practiced witchcraft), *report and recommendation adopted*, No. 1:16–CV–379–HSO–JCG, 2017 WL 1095062 (S.D. Miss. Mar. 22, 2017); *Revoal v. Bush*, No. 3:14–CV–4011–B (BH), 2014 WL 12595723 (N.D. Tex. Nov. 17, 2014) (dismissing as frivolous a complaint alleging, *inter alia*, that plaintiff was fed "feces, vomit, sperm, urine and other foreign non-editable [sic] products" and witnessed former President George H.W. Bush "practice slavery" in Dallas), *report and recommendation adopted*, No. 3:14–CV–4011–B (BH), 2015 WL 12753964 (N.D. Tex. Jan. 6, 2015); *Miller v. Chicago Pub. Libr.*, No. 05 C 7095, 2006 WL 1006002 (N.D. Ill. Apr. 11, 2006) (dismissing as frivolous a complaint alleging that high-ranking government officials were partaking in an international assassination conspiracy). Indeed, Attia alleges that "well-known[,] gay[]" former government employees have waged a yearslong campaign to kill him because he caught them trying to watch him shower in 2013. In furtherance of this conspiracy, the individual defendants apparently had a "NVIDIA supercomputer," equipped with a GPS, implanted in his body years ago when he was undergoing surgery and have since followed him around on a daily basis. They also shoot lasers into Attia's

5

house and use "mixed reality" cameras, placed *inside* his house, to see through his clothes. Unable to kill him at every turn, Attia explains, the defendants recently stole his keys from his motorcycle, parked in the Hard Rock Casino lot, in order to put rat poison in his food and "acid" in his shampoo. These allegations unambiguously "rise to the level of the irrational or the wholly incredible . . . ." *Denton*, 504 U.S. at 33. For these reasons, Attia's Complaint is frivolous.

### B.  Leave to Amend

#### i.  Law

Ordinarily, a *pro se* litigant "should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). Nevertheless, the Court need not allow a plaintiff an opportunity to amend "if he has alleged his best case." *Bazrowx*, 136 F.3d at 1054 (citing *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir.1986)). *See also Brewster*, 587 F.3d at 767–68.

#### ii.   Application

In the present case, the Court conducted a screening hearing in order to allow Attia to expound upon his claims. At the hearing, attended in-person by Attia, he fully described the allegations that form the basis of his Complaint. Indeed, before the hearing concluded, the Court asked Attia whether he had fully described the allegations in his Complaint. He answered in the affirmative. As such, in Attia's own words, he alleged his "best case" at the hearing. *Bazrowx*, 136 F.3d at 1054 (citing *Jacquez*, 801 F.2d at 792–93). Since Attia has pleaded his "best case" and that case is frivolous, it is not necessary for the Court to offer Attia an opportunity to amend his Complaint before dismissal with prejudice. *Brewster*, 587 F.3d at 767–68.

### IV.    <u>Conclusion</u>

**IT IS THEREFORE ORDERED AND ADJUDGED** that Attia's [1] Complaint is **DISMISSED WITH PREJUDICE** as frivolous**.**

**SO ORDERED AND ADJUDGED**, this the 2nd day of June 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE